Nat H. Hentel, J.
Plaintiff, an attorney, appears pro se, in this small claims proceeding in which he seeks refund of towing charges assessed against him; and for property damage to his vehicle while in the custody of defendants during the towing and storage procedures involved.
Plaintiff was called to duty as a Parking Violations Bureau Hearing Officer in LeFrak City on March 7, 1973. When he arrived in the area at approximately 9:30 a.m., he could find no available parking space, and so he parked in the Howard Johnson Restaurant parking lot nearby on Queens Boulevard, where he had been a frequent patron on prior occasions, and where he intended to have lunch on that date. In fact, plaintiff did eat lunch at the defendant restaurant that day, arriving sometime between 12:30 p.m. and 1:00 p.m. After finishing lunch, he went to his car in the restaurant parking lot at 2:00 p.m., released the alarm system, and put something in the trunk of his car, relocked his vehicle, and went back to his duties at the Parking Violations Bureau. Upon returning to the parking lot at 4:15 p.m., he found his car missing. He inquired at the restaurant and was given the telephone number of defendant towing service. He called the towing service, and was advised that the R. I. P. C. Corp. was an agent of the Howard Johnson Restaurant, and that his vehicle had been towed from the lot at the request of the restaurant defendant. Plaintiff thereupon journeyed to the garage where his car had been towed — some 2.6 miles distant from the lot — and there was required to pay $45 to R. I. P. C. in order to redeem his car. It was at the garage that plaintiff first noticed the chromium right side trim on his vehicle had been pulled away and the car side was damaged.
Further, plaintiff testified that there are large signs at the two entrances to the parking lot which read: “ Howard Johnson PATRONS ONLY-UNAUTHORIZED VEHICLES WILL BE REMOVED AT owner’s expense and liability.” Plaintiff stated that there were no time limitations delineated on these two signs as to how long a patron could stay with impunity; and further that there were no signs posted to this effect inside the restaurant. There were some other signs posted on the back and side of the building which were not visible to plaintiff in driving inside the lot, and parking where he did park. Ninety-minute limitation was noted on these latter two signs. Apparently, there was no posting of towing charges at all in or about the Howard Johnson parking lot. Plaintiff further testified that when he asked the *885 Howard Johnson receptionist at the restaurant where his car was, he was told for the first time about a 90-minute time limit for customer parking in a most apologetic manner. Hone of plaintiff’s testimony was controverted by any officer or employee of Howard Johnson.
The general manager, Mr. Portnoy, and the tow-truck operator, Mr. Fernandez, of R. I. P. 0., who had seen plaintiff’s vehicle on March 7, 1973, both testified at the trial. They denied that plaintiff’s vehicle had been damaged by them in the process of towing and parking the car in their storage garage. They testified that they customarily took photographs of each car before they towed at the instance of Howard Johnson, but did not produce such a photograph of plaintiff’s car. Mr. Portnoy claimed there were 90-minute parking signs in the Howard Johnson lot but no photographs or proof of their existence were produced, nor was their location in the lot established so that the court could determine whether the using public is or was put on proper notice on March 7, 1973.
Mr. Portnoy testified that there was a four-hour time limit for customer parking but, again, there is no proof of any proper posting of such notice to this effect. He also said that he was called every day by Howard Johnson, and that his employees would go through this lot three times a day and make a list of overparked cars, and then make their own determination of which cars to tow away. Mr. Portnoy did not produce in court the alleged list of overtime parkers for March 7, 1973, nor did he establish the criteria by which his employees determined whether or not the cars they towed were patrons of the restaurant, or whether or not the car owners were still in the restaurant at the time of towing. Thus, there does not appear to be any proper or consistent standard operating procedure with respect to the towing of cars established as between Howard Johnson and its agent in this case, R. I. P. C. Corp. There is no proof that defendants set up a valid and fair time checking system. Rather, it appears that R. I. P. C. made the decision as to which car it would tow, acting as both judge and jury of the fact of overtime parking, despite the patronage of the owner of a vehicle destined for towing, and despite the rather ambiguous public signs posted which did not delineate clearly time limit or exact penalty.
Under these circumstances, the court finds that plaintiff was not put on proper notice as to exact penalties involved which would lead him to inquire further as to the alleged facts upon which towing and charges would be based; there was no post *886 ing of towing charges or rates readily apparent to patrons inside or outside the lot; and, in fact, plaintiff was a patron on March 7,1973, of the restaurant. Even if we took the criterion testified to by Mr. Portnoy that there was a four-hour time leeway given to patrons before towing, such time would not toll against plaintiff since he left the restaurant as a patron at 2 p.m. The four-hour leeway would toll at 6:00 p.m. His car was missing from the lot at 4:15 p.m. All in all, it appears that plaintiff was led into a trap by defendants’ failure adequately and clearly to warn patrons of their exact intentions with respect to extended parking.
Judgment for plaintiff accordingly on his first cause of action for the sum of $45 for alleged towing charges as against both defendants.' Since all motions were deemed made by all parties at the end of the trial, the court grants plaintiff’s motion to conform his pleadings to the proof at the trial. Thus, the judgment for $45 as aforesaid;
The circumstances also strongly establish by an inference the court finds hard to escape that defendants damaged plaintiff’s vehicle in the course of towing and storing it. The court finds the paid bill produced into evidence by plaintiff showing $45.21, as the amount of the repairs necessitated by the damage done. Accordingly, judgment for the plaintiff as against both defendants for the additional sum of $45.21 with respect to the second cause of action for damages.
As an obiter dictum, this court wishes to comment upon the argument raised by plaintiff with respect to the ‘ ‘ reasonableness ” of the towing charges involved, in the event the court found that his car was properly towed from the lot — which, in fact, it did not. Plaintiff claims that $45 is an excessive towing charge for a 2.6 mile towage. He cites section 436-7.0 of the New York City Administrative Code (Licensing and regulation of towing cars) as authority for establishing legislative guidelines for towing charges. According to this section, he claims that maximum towing charges as established must be based upon a reasonable profit only, as a measure of protecting the public from fraud and exorbitant rates when it usually is at the mercy of tow truck operators in emergencies. This section recommends that towing charges shall not exceed the maximum charge of $4 for the first mile, and $1 for each additional mile. Thus $6 would appear to be a reasonable charge herein. It is to be noted that this section pertains to disabled vehicles only, as quickly pointed out by the defendants in their argument in opposition. The court would like to comment that what apparently would be reasonable *887 for towing disabled vehicles as a matter of public interest and safety, would also appear to be reasonable for towing nondisabled but overtime-parked vehicles not otherwise blocking public traffic.
In response to this argument, counsel for defendants claims that a towing charge of $50 would be reasonable under the circumstances, and cites Matter of Freidus v. Leary (66 Misc 2d 70, revd. 38 A D 2d 919), in support of such reasoning. The Freidus case involves New York City Police Department tow-away charges of $50 in illegal parking towing program. This court does not find such cited case applicable herein, inasmuch as it refers to a public agency towing pursuant to police powers as opposed to towing for private business purposes; and, inasmuch as the Police Department offered positive proof as to its cost-per-tow overhead. (Actually, this court agrees with the dissenting opinion of Mr. Justice Kupferman in the Appellate Division reversal of the Freidus case.)
The Administrative Code of the City of New York properly seeks limitation of such charges based upon a “ reasonable profit ” factor.
Section 436-7.0 reads in part as follows: “It is hereby declared and found that the rates and charges imposed for the towing of disabled motor vehicles in the streets of the city * * * is a matter affecting the public interest and consequently should be subject to supervision and administrative control, for the purpose of safeguarding the public against fraud, exorbitant rates and similar abuses. The operation of towing cars * * * is a private business and persons engaged therein are entitled to a fair and reasonable return therefrom. However, it is against public interest for persons rendering this type of service to derive excessive profits from exorbitant rates.” A careful study and survey of the rates charged by towing car operators reveals that a wide divergence exists in the charges made for their services. Such charges range from a low of $1 to a high of $35 for the first mile or part thereof, and from $1 to $20 for each additional mile or part thereof. Investigation of the towing car business leads to the inevitable conclusion that it is necessary that maximum charges must be established for the services rendered by towing car operators and owners which will afford a reasonable profit and at the same time protect the public from fraud, exorbitant rates.
“ c. Towing Oar License — It shall be unlawful to * * * operate a towing car [for hire in the city] unless the owner thereof shall have obtained a license therefor from the [Police] commissioner.”
*888 Keep in mind that the publicly funded overhead of the Police Department of the City of New York in operating its towing program in the Freidus case (supra) involves a heavy-duty police truck, the salaries of two or more New York City Patrolmen and storage employees; gas, mileage, depreciation, and many other factors evidently proved to the satisfaction of the court as to the reasonableness of such towing charge. This is within the proper exercise of the police power of the city. Here, Mr. Portnoy generally and inexplicitly testified that the storage garage was open seven days a week from 6:00 a.m. to 1:00 a.m. ; that his employer’s two tow trucks were manned by two or three men 16 hours a day; that photographs were taken of each towed vehicle; and that there were labor, gas, oil, etc., charges involved in the overhead of the operation without mentioning dollar costs. This testimony was given to convince the court of the reasonableness of the $45 charge. In fact, if this were in issue now, this court could not determine the reasonableness of such towing charge without knowing the mathematics and economics of the R. I. P. C. Corp. operation other than the mere generalities mouthed by Mr. Portnoy. Incidentally, there was no proof offered that R. I. P. C. Corp. was licensed on March 7, 1973, to operate tow trucks for hire even as a hired agent of the defendant restaurant. Knowing this to be so, counsel for defendants readily admitted that this court, under the circumstances, would have to use its best judgment as to reasonableness. If it were an issue, this court would likely hold that $15 to $20 would be more than ample as a towing charge for a 2.6 mile tow within the guidelines of the Administrative Code.
Assuming arguendo that R. I. P. C. Corp. did not operate tow trucks for hire within the purview of section 436-7.0., and thus was not bound by the maximum charges recommended . therein, would not such an argument indeed be specious ? The tow truck in either case — private agency usage or for hire — • would still be using the public streets; would still be towing the same cars; would still be expending the same energy; and involving the same over-all operational costs. What is the difference? Can this court in good conscience say that the words for hire impose a reasonable limitation on towing charges under the Administrative Code and not for hire will not? Why should a mere matter of nomenclature— for hire or private usage — give the latter a greater advantage in billing the same public victim or user? This court does not think kindly of such a distinction in applying the “ reasonable profit” rule of the Administrative Code.